# United States Court of Appeals
## For the Eighth Circuit

_____

No. 23-1510
_____

United States of America

*Plaintiff - Appellee*

v.

Wayne Duvall Coleman

*Defendant - Appellant*
_____

Appeal from United States District Court
for the Western District of Arkansas - Fayetteville
_____

Submitted: November 17, 2023
Filed: March 29, 2024
[Published]
_____

Before KELLY, ERICKSON, and GRASZ, Circuit Judges.
_____

PER CURIAM.

Wayne Duvall Coleman pleaded guilty to possession with intent to distribute methamphetamine. He appeals his sentence, arguing that the district court[1] erred in the calculation of his advisory Guidelines range. We affirm.

_____

[1]The Honorable Timothy L. Brooks, United States District Judge for the Western District of Arkansas.

I.

On June 15, 2022, law enforcement officers responded to a report of shots fired in the area of a Springdale, Arkansas, apartment that had been recently under surveillance for suspected drug activity. At the scene, they saw a green SUV leaving the area. Officers located the SUV, conducted a traffic stop, and identified Coleman as the driver. They obtained a warrant to search the SUV, where they found over 50 grams of methamphetamine.

Coleman pleaded guilty to one count of possession of methamphetamine with intent to distribute, in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(C).[2] As relevant to this appeal, Coleman objected to the recommendation in his Presentence Report that a 2-level enhancement for possession of a dangerous weapon applied to his offense level. United States Sentencing Guidelines (USSG) § 2D1.1(b)(1) (2021).

At sentencing, the district court considered police reports and a video of the June 15 incident admitted on stipulation by the parties and found the following facts. Coleman pulled up to the apartment in a green SUV. A man, B.C., came out of another apartment, raised what appeared to be a gun in Coleman's direction, and then quickly retreated inside. Coleman was holding a long gun but was still "behind the cover of the SUV." Within seconds, just as Coleman emerged, B.C. fired six or seven shots from inside, in Coleman's direction. Coleman again took cover. As he did, he manipulated the side of the long gun, which appeared to be "an AR-style rifle," possibly pulling back the ejector or trying to reload it. At that point, a woman came out of the apartment building, yelling "Stop, please stop!" She moved toward

---

[2]Coleman was also charged with one count of possessing a firearm as a convicted felon, in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2) based on conduct from an earlier date. This count was dismissed at sentencing, and the conduct underlying it was not considered relevant conduct. See USSG Ch.1, Pt.A, intro. comment.

Coleman, "staying low to avoid getting hit," got into the SUV with him, and they drove away.

Officers arrived on scene, where they found two unspent rounds of .223 caliber ammunition—a size used in AR-style rifles—in the street in front of the apartment building. They also found several spent .45 caliber casings inside the apartment where B.C. had retreated, and in the outdoor parking area. The district court found that the location of the spent casings supported the theory that shots were fired "from inside out." The court also found that the unspent ammunition located near the curb was "in the general vicinity" of where Coleman had either been trying to eject or reload a firearm before he and the woman drove away. Inside the green SUV was a receipt for .223 ammunition.

Based on these findings, the court applied the § 2D1.1(b)(1) enhancement, resulting in an advisory Guidelines range of 151–188 months. The court sentenced Coleman to a 140-month term of imprisonment and 3 years of supervised release. This appeal followed.

II.

"We review the district court's findings of fact for clear error and its application of the guidelines *de novo*." United States v. Renteria-Saldana, 755 F.3d 856, 858–59 (8th Cir. 2014) (citation omitted). Pursuant to § 2D1.1(b)(1), a defendant's base offense level for a drug offense increases by two levels "[i]f a dangerous weapon (including a firearm) was possessed." We have held that "[t]his enhancement applies if the government proves, by a preponderance of the evidence: (1) the gun was possessed, and (2) it was not clearly improbable that the weapon was connected to the drug offense." United States v. Rivera, 76 F.4th 1085, 1091 (8th Cir. 2023), cert. denied, No. 23-6421, 2024 WL 675188 (U.S. Feb. 20, 2024); see also USSG § 2D1.1, comment. (n.11). "The evidence is sufficient to apply the [§ 2D1.1(b)(1)] increase where there is a temporal and spatial relationship between

the weapon, the drug trafficking activity, and the defendant." United States v. Bandstra, 999 F.3d 1099, 1101 (8th Cir. 2021) (citation omitted).

Coleman does not contest that he possessed a dangerous weapon on June 15, 2022. Instead, he argues that there was insufficient evidence of a temporal and spatial connection between the weapon he possessed at the scene of the shooting and the distribution-quantity of methamphetamine in the SUV. According to Coleman, no evidence supported the idea that the shooting incident with B.C. had anything to do with drug distribution. Rather, witnesses suggested "that it had to do with jealousy over a woman."

We discern no error in the district court's conclusion that there was sufficient connection between the weapon and Coleman's drug trafficking offense to support the enhancement. The court found that Coleman had a firearm in the SUV when he arrived at a location that was under investigation for drug activity. And it found that Coleman had a distribution-quantity of methamphetamine in the same SUV shortly thereafter. These findings, which Coleman does not meaningfully challenge, support the district court's conclusion that it was not "clearly improbable that the weapon was connected with [Coleman's drug] offense." United States v. Anderson, 618 F.3d 873, 879–80 (8th Cir. 2010) ("Findings will be reversed only if the entire record definitely and firmly establishes that a mistake has been made." (citation omitted)).

We affirm the judgment of the district court.

_____